[No. 18664. Department One. September 20, 1924.]

## J. D. LOWMAN, *Appellant*, v. E. H. GUIE, *Receiver of American Publishing Company, Respondent.*[1]

CHATTEL MORTGAGES (23, 43-2)—PRINCIPAL AND AGENT (67)—FAIL-URE TO RECORD—PRESUMPTIONS—KNOWLEDGE OF AGENT. Where a chattel mortgage was not recorded within ten days, as required by Rem. Comp. Stat., § 3780, a common law trust represented by three trustees, one of whom was the mortgagor selling the property to the trust, is a bona fide purchaser, under the statute, and is not charged with such trustee's knowledge of the mortgage; since there is no presumption of the imputed notice of an agent who was acting in his own interest.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered December 18, 1923, upon findings in favor of the defendant, in an action to foreclose a chattel mortgage, tried to the court. Affirmed.

*Tucker, Hyland & Elvidge* and *Mary H. Alvord,* for appellant.

*Paul Hauser* and *Guie & Halverstadt,* for respondent.

PARKER, J.—The claimant, Lowman, seeks foreclosure of a chattel mortgage upon six linotype machines in the possession of, and claimed by, the receiver Guie as a part of the assets of the American Publishing Company. Lowman presented to the superior court for King county, in which the receivership proceedings are pending, his petition to be awarded such foreclosure. A trial upon the merits resulted in findings and judgment denying to Lowman the relief prayed for by him, from which he has appealed to this court.

[1]Reported in 228 Pac. 845.

The controlling facts may be summarized as follows: On July 8, 1922, William J. Davis, being indebted to Lowman in the sum of $5,000, evidenced such indebtedness by then executing and delivering to Lowman his promissory note for that sum, payable one year after date. At the same time, Davis, being the owner of the machines in question, executed and delivered to Lowman a chattel mortgage upon the machines to secure that indebtedness; the machines being then and at all times here in question in King county. The chattel mortgage was, on the date of its signing, duly acknowledged and verified as to good faith, as required by § 3780, Rem. Comp. Stat. [P. C. § 9747], but it was not filed for record in the office of the auditor of King county within ten days following its execution as required by that section, and was not so filed for record until August 5, 1922, which was twenty-eight days after its execution. Thereafter Davis sold and delivered to the American Publishing Company the machines in question, in consideration of a number of beneficial interests or shares of stock in the company for which he had subscribed. There is no proof that any of the officers of the company had any knowledge of the existence of the mortgage which had been executed by Davis upon the machines until long after such sale of the machines by Davis to the company, other than the knowledge which Davis himself possessed, he being a trustee of the company.

The American Publishing Company is called in the proceedings in the action in which the receiver was appointed, and in the later receivership proceedings, "a common law trust." It is not a corporate entity under our incorporation statutes. However, counsel for Lowman proceed upon the theory that it is a legal entity apart from its members, and in that respect

differs from a partnership. We shall so assume for argument's sake and proceed upon that theory, but not so decide at this time. The existence of the American Publishing Company is evidenced by a declaration of trust executed by Davis and nine others on March 24, 1923, which was recorded in the auditor's office of King county on April 3, 1923. This declaration of trust recites, among other things, in substance, that the trust is formed for the purpose of publishing a daily newspaper in Seattle; that its subscribers are advancing funds necessary for the purpose and are to receive "beneficial interests or shares of stock for the advances so made by each of them, to wit, one beneficial interest for each $100 paid;" that its affairs shall be managed by three trustees, naming Davis and two others as such trustees, who shall hold office during the life of the trust, which shall continue for twenty years, unless a majority of the beneficial holders shall otherwise determine, provision being made for the filling of any emergency vacancy in the office of trustee. The prescribed powers of the trustees are much the same as the powers of corporation trustees, though somewhat more elaborately specified in the declaration of trust.

On May 29, 1923, respondent, Guie, was appointed general receiver of the property and affairs of the American Publishing Company, because of its insolvency, in an action brought against the company and its trustees by W. B. Monks, one of its creditors. He thereupon duly qualified as such receiver and took possession of the property and affairs of the company, and thereby acquired possession of the machines in question as a part of its assets. Thereafter Lowman filed his petition in the receivership proceedings seeking foreclosure of his mortgage as against the receiver,

which was followed by judgment denying the relief so prayed for, as above noticed.

Counsel for appellant, after specifying in their brief several assignments of error, state, at the beginning of their argument, the question to be here decided as follows:

"The foregoing assignments of error all go to the one point and may be grouped and argued under the one head namely, is the American Publishing Company a subsequent purchaser of the machines for value and in good faith?"

Section 3780, Rem. Comp. Stat. [P. C. § 9747], relating to the execution and recording of chattel mortgages, reads in part as follows:

"A mortgage of personal property is void as against all creditors of the mortgagor, both existing and subsequent, whether or not they have or claim a lien upon such property, and against all subsequent purchasers, pledgees, and mortgagees and encumbrancers for value and in good faith, unless it is    .    .    .    filed within ten days from the time of the execution thereof in the office of the county auditor of the county in which the mortgaged property is situated.    .    .    ."

We have seen that there was no proof that any of the three trustees, other than Davis himself, had any knowledge of the execution and delivery of the chattel mortgage to Lowman until long after the machines were sold and transferred by Davis to the company, so our real question becomes one of the knowledge of Davis being in law the knowledge of the company. It is argued in behalf of Lowman that such knowledge must be considered as the knowledge of the company because Davis, the trustee who sold the machines to the company, possessed such knowledge at the time of the sale. Our decision in *Clark v. Kilian,*

116 Wash. 532, 199 Pac. 721, renders it plain that the burden of proving actual knowledge on the part of the officers of the publishing company rested upon Lowman, since the mortgage was not timely recorded. Not having made such proof, other than proof of knowledge possessed by Davis, Lowman's claim must stand or fall upon the correct answer to the question of Davis's knowledge under the circumstances being presumptively the company's knowledge. We shall not attempt to review the many decisions touching the law upon this general subject. They seem far from being harmonious in theory, and seem also in conflict viewed with reference to given facts. We think it is sufficient for present purposes to note the law as expressed 2 Mechem on Agency, 2d Edition. In § 1813 of that most excellent work, we read:

"The law imputes to the principal, and charges him with, all notice or knowledge relating to the subject-matter of the agency which the agent acquires or obtains while acting as such agent and within the scope of his authority, or, according to the weight of authority, which he may previously have acquired, and which he then had in mind, or which he had acquired so recently as to reasonably warrant the assumption that he still retained it. Provided, however, that such notice or knowledge will not be imputed: (1)    .    . .    (2) Where the agent's relations to the subject-matter are so adverse as to practically destroy the relation of agency; and, (3)    .    .    ."

Referring to the second subdivision of this quoted proviso in § 1815, that learned author further says:

"The rule imputing notice is usually based, as has been seen, upon the theory that it is the duty of the agent to communicate to his principal the knowledge possessed by him relating to the subject-matter of the agency, material to the principal's protection and interests, and the presumption that he has performed

this duty. This presumption, however, it is said, will not prevail where it is certainly to be expected that the agent will not perform his duty, as where the agent, though nominally acting as such, is in reality acting in his own or another's interest, and adversely to that of his principal.''

We are of the opinion that the sale of the machines by Davis to the publishing company, he, of course, representing his own interest and at the same time pretending to represent the interests of the publishing company, was, under the circumstances, such as to negative the presumption that he performed his duty by informing the other two trustees, and thereby informing the company, that he had mortgaged the machines to Lowman and that they were so encumbered when he assumed to transfer them to the company in payment of his subscription for beneficial interests in the company. We therefore conclude that it must now be held, as a matter of law, that the publishing company had not, at the time of the sale of the machines to it, any knowledge of the existence of the mortgage given by Davis to Lowman, and there being no constructive record notice of the mortgage, it is void as against the company, in whose shoes the receiver now stands.

While counsel for the receiver have resisted the claim of Lowman upon the theory we have above discussed, they have also resisted the claim of Lowman upon the theory that the receiver is in fact representing the creditors of Davis; that is, that Davis, together with his associates, are individually liable as partners to the creditors represented by the receiver, and that hence the mortgage is void as against such creditors for want of timely recording. This suggests an interesting inquiry as to the status of the American Publishing Company as a legal entity apart from its

managing trustees and its members holding beneficial interests therein. Our recent decision in *State ex rel. Range v. Hinkle,* 126 Wash. 581; 219 Pac. 41, is of interest in this connection, though we do not now care to express an opinion as to whether or not that decision is of any controlling force upon the exact question here presented. In view of what we have already said, it is unnecessary to pursue this inquiry further.

The judgment is affirmed.

MAIN, C. J., HOLCOMB, TOLMAN, and BRIDGES, JJ., concur.